UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| FRANCISCO LAKE | ) | |
| | ) | |
| | ) | |
| v. | ) | No.1:10-CV-87/1:08-CR-4 |
| | ) | *Judge Curtis L. Collier* |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

# **M E M O R A N D U M**

*Pro se* Petitioner Francisco Lake ("Petitioner") timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File Nos. 161, 165). Petitioner contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. The Government opposes Petitioner's § 2255 motion (Court File No. 179). The motion, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion will be **DENIED** for lack of merit (Court File No. 161, 165).

**I.     RELEVANT FACTS AND PROCEDURAL HISTORY**

According to the factual basis, in November 2007, Petitioner and others agreed to travel from Atlanta, Georgia to Memphis, Tennessee to purchase merchandise and gift cards using credit card numbers they had illegally obtained. Petitioner and his co-conspirators were traveling on Interstate 24 in Chattanooga, Tennessee when they were stopped for speeding. Inside Petitioner's vehicle, police located 245 Visa credit cards, 25 drivers licenses, a credit card strip encoder, and two laptop computers. One of the laptops contained software capable of encoding credit card numbers onto magnetic strips. Over 17,000 credit card numbers and matching names of individuals were

contained on the computers.

All of the credit cards found in Petitioner's vehicle were usable and contained encoded information corresponding to an individual's name and valid credit card number issued by a bank. The name embossed on the card, however, did not match the information encoded on the magnetic strip. The card would still operate because both the encoded name and encoded number matched with credit cards validly issued by a financial institution. The driver's licenses were fake, but contained the pictures of two of Petitioner's co-conspirators. The names matched the embossed names on the credit cards. Petitioner admitted to agents he organized the trip and normally purchases four to five thousand credit card numbers at a time. In the factual basis, Petitioner agreed he was a leader and organizer of the conspiracy to obtain the credit card numbers. The co-conspirators pictured on the driver's licenses were part of his "crew" and were the main users of the cards.

On January 23, 2008, Petitioner was indicted pursuant to a superseding indictment. Count one of the superseding indictment charged Petitioner with conspiracy to commit identification document fraud, access device fraud, and aggravated identity theft; count two charged him with identification document fraud; count three charged him with access device fraud; and count four charged him with identity theft. Petitioner initially participated with his codefendants in a joint motion to suppress (Court File No. 35) but withdrew from that motion (Court File No. 59). The Court later denied the motion as to his codefendants (Court File No. 91). Before the Court ruled on the motion to suppress, Petitioner submitted a written plea agreement in which he agreed to plead guilty to counts one, three, and four (Court File No. 88). However, he withdrew his plea of guilty as to count four and moved to dismiss the count (Court File Nos. 136, 139). The Court granted the

motion to withdraw Petitioner's guilty plea and set the case for trial (Court File No. 137), but denied the motion to dismiss count four of the indictment (Court File No. 144). Petitioner then pleaded guilty to all four counts of the superseding indictment pursuant to a factual basis and was sentenced to a term of 58 months imprisonment on November 4, 2009 (Court File No. 153). The Court amended its judgment on January 21, 2010 to include the forfeiture allegations (Court File No. 153). On April 23, 2010, Petitioner filed the instant motion to vacate the judgment and sentence pursuant to 28 U.S.C. § 2255 (Court File No. 161).

## II.     STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, on the grounds

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*,

3

165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

**III. DISCUSSION**

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions

4

of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

When, as here, the petitioner alleges ineffective assistance of counsel in a plea proceeding, the movant must show, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for

5

counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995) ("[Petitioner] alleged in his petition that he would not have pleaded guilty but would have insisted upon going to trial . . . . However, this bare allegation is not sufficient to establish prejudice."); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient).

Petitioner alleges four grounds on which he claims his counsel was constitutionally defective. The Court will consider each ground in turn.

### 1. Motion to Suppress

Petitioner first argues his counsel was ineffective because he did not seek to suppress the evidence obtained through the Chattanooga, Tennessee traffic stop. Petitioner argues the stop was unlawful because it was premised on an observed invalid registration, which was later deemed to be valid. After determining the vehicle's registration was valid, police then claimed the vehicle was speeding, although "no proof was given and no ticket issued." Petitioner argues the cars were then searched for "an unconstitutionally unacceptable period of time" while a canine unit was called in. After the canine units arrived, the police conducted a more extensive search and located the materials in question. Petitioner claims the stop was made without probable cause and all evidence found as a result of the stop is inadmissible as "fruit of the poisonous tree." Because defense counsel did not file a motion to suppress this evidence, Petitioner argues, his performance was

deficient.

However, defense counsel did in fact join in the motion to suppress filed by Petitioner's codefendants. Counsel withdrew from participation in that motion without explanation. However, Petitioner's initial plea agreement was submitted and signed by Petitioner and his counsel on September 22, 2008, more than three weeks before the Court ruled on the motion to suppress in which Petitioner's codefendants still joined (Court File No. 87). Petitioner does not argue defense counsel withdrew the motion without his knowledge or consent. Thus Petitioner cooperated with the government and agreed to plead guilty while a motion to suppress was still pending. Accordingly, Petitioner is unable to show, as he must, *Hill*, 474 U.S. at 58-59, he would otherwise have gone to trial had defense counsel joined in the motion to suppress.

Further, the Court ruled on Petitioner's codefendant's motion to suppress, which contained the same allegations Petitioner makes in his § 2255 motion, and concluded the stop and search was lawful (Court File No. 91). The Court concluded the officers stopped Petitioner's vehicle because the tag was partially obscured and the car was traveling at 62 mph in a 55 mph zone. The Court thus found probable cause for the stop. The Court also rejected the argument, now raised again by Petitioner, that the scope and length of the detention was unreasonable. The Court concluded the officers had reasonable suspicion to support the detention and that the 58 minute detention was reasonable under the circumstances. Finally, the Court also rejected the claim the search was unlawful. Petitioner does not now provide a basis for finding the search unlawful, but the Court previously concluded the "indication" of the canine unit on Petitioner's vehicle provided sufficient probable cause. Important to the Court's current analysis, Petitioner does not challenge, or even acknowledge, the substance of the Court's determination in the motion to suppress. Rather,

7

Petitioner simply argues defense counsel's performance was deficient because he did not file such a motion. Because the Court already rejected the arguments made by Petitioner, he has not shown prejudice as a result of counsel's failure to file a motion to suppress.

Petitioner cannot establish ineffective assistance of counsel due to counsel's failure to file a motion to suppress because he does not effectively demonstrate he would otherwise have pleaded not guilty and he does not establish prejudice from counsel's inaction. Petitioner's § 2255 motion is **DENIED** on this ground.

**2. Failure to Argue Lack of Knowledge to Aggravated Identity Theft**

Petitioner next argues his counsel was ineffective when he failed to "ma[k]e the court aware of" the fact that Petitioner did not know the "means of identification" belonged to another person, as is required for a conviction under 18 U.S.C. § 1028A(1). *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). However, Petitioner's counsel in fact filed a motion to dismiss count four based on this very argument (Court File No. 139). The Court denied this motion, concluding a defendant could not move to dismiss an indictment for insufficient evidence based only on pretrial evidence (Court File No. 144). Accordingly, Petitioner is simply incorrect his counsel did not offer this argument and he fails to establish deficient performance.

To the extent Petitioner argues the evidence to convict him was insufficient, by pleading guilty Petitioner waived his right to challenge the sufficiency of the evidence. *See United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) ("This Circuit has specifically interpreted Rule 11(a)(2) to bar a defendant's challenge that evidence was insufficient to support a conviction, absent a conditional plea that specified the issue for preservation on appeal."). Moreover, after the Court denied Petitioner's motion to dismiss count four, Petitioner decided to plead guilty. At the

8

rearraignment, the following colloquy occurred between the Court and Petitioner.

> THE COURT: With respect to Count 4, the essential elements are, first, that the defendant knowing used or possessed (2) the means of identification of another and (3) during and in relation to at least one of the above-specified offenses. Do you understand what you're pleading guilty to?
>
> PETITIONER: Yes, Your Honor.

(Court File No. 178, Rearr. Tr., p. 11). The Supreme Court has emphasized the weighty nature of sworn testimony: "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Further, the factual basis to which Petitioner agreed and stipulated states the information belonged to real people numerous times (Court File No. 145). Because Petitioner pleaded guilty with a full understanding of both the elements of the crime and factual basis to which he stipulated, he has failed to establish he would otherwise have pleaded not guilty.

Petitioner's counsel made the argument Petitioner now asserts, and after the Court declined to dismiss the count, Petitioner decided to plead guilty with a full understanding of the elements of the crime to which he was pleading. Accordingly, the Court concludes Petitioner has failed to establish counsels performance was deficient or he would have pleaded not guilty. His motion is **DENIED** on this ground.

### 3. Failure to Object to § 3B1.1 Enhancement–Major Role

Petitioner argues defense counsel was deficient because he did not object to the USSG § 3B1.1 aggravating role enhancement as an "organizer or leader of criminal activity that involved five

9

or more participants."[1] However, Petitioner's counsel did in fact object to the four level enhancement under § 3B1.1 (Court File No. 176, Sent. Tr., p. 3). After Petitioner objected, the government presented a witness, Charlie Wade, who testified to Petitioner's role as a leader based on interviews with the codefendants and evidence located in the vehicle. Counsel then proceeded to extensively cross examine the witness. Following the witness's testimony, counsel argued against the enhancement. Included in counsel's argument was the following statement

> The guideline requires a organizing, leading, managing, and supervising role. The agent has testified that there was some indication of a leadership or managerial role. But the guideline also says that it's about organizing, leading, managing individual people, not just assets, activities, and proceeds, strictly speaking. In this case this indictment and this incident was an attempt. There was no actual sharing of proceeds. There is no restitution alleged because there was none -- no one's out any funds and no funds were then split or apportioned. So our position is that any of the activities that would be called leadership or organizational activities would have had to occur whether there was -- whether Mr. Lake was acting alone or whether there were more people, because those same activities, the creating of the credit cards, renting a car, and coming to Tennessee would have occurred regardless of how many people were physically present.

(*Id.* at p. 19-20). The Court overruled Petitioner's objection, concluding the Presentence Investigation Report ("PSR") accurately reflected Petitioner's role in the offense.

Contrary to Petitioner's current argument, counsel did in fact argue the aggravating role enhancement was inappropriate. Petitioner has identified no evidence counsel should have presented or argument counsel should have offered instead. The Court thus concludes Petitioner has failed to establish counsel's performance was deficient, and **DENIES** his motion on this ground.

### 4. Failure to Object to § 3B1.1 Enhancement–Five Participants

---

[1] Although Petitioner labels this claim as "Counsel Failed To Assert That Defendant Played A Minor Not Major Role In The Offense," it does not appear Petitioner argues counsel should have moved for a downward departure under USSG § 3B1.2. Indeed he claims he was "one of four equal participants." Rather, he only objects to the aggravating role enhancement under § 3B1.1

Petitioner argues counsel was constitutionally deficient when he failed to object to the § 3B1.1 enhancement on the ground the criminal activity only involved four participants, rather than the five required by § 3B1.1(a). However, as noted above, counsel did in fact object to this enhancement and he did so on this very ground.

> From a legal standpoint, I think the government needs to prove five active participants in this organization. I use the word organization in quotes because that's the word that is used in the guidelines. I, frankly, am at a loss. I had assumed from discussions about our objection informally that the government was going to be alleging that the fifth person was the provider of these credit cards. Today it appears that the fifth person was the unknown driver, where, in all candor, Your Honor, as an officer of this court, I don't know about a fifth driver who was not arrested on the scene, having been with this case for almost two years. In the absence of any identifying information, I think that that causes a problem for a ruling that that fifth person exists; but it also creates an even larger problem, I think, that the fifth person applies, even if they exist. The reason is that the guidelines speak in terms of an organization, it speaks in terms of apportioning relative responsibility. And in the absence of not only identifying information but information about this alleged fifth person's role in the offense-- We have no information from the agent about that fifth person's perhaps sharing of the proceeds, decision-making authority, all of the factors that are listed, and I'll go through them, just-- The factors that are listed in the statute to apportion that responsibility and to determine someone's relative role are completely absent with regard to that fifth person, in either case, whether it's the unnamed driver or the unnamed source of the credit cards.
>
> The statute speaks of an organization. And the analogy that came to my mind, I rely heavily on the postal service, but they're not -- I rely on UPS, they do a lot of things for me, but they're not a part of my organization. I think this allegation here of the fifth person, that fifth person may exist or not, but, nonetheless, not part of the organization that the statute addresses, the -- excuse me, the guideline. The guideline says that the smaller an organization is, the less that the factors apply, merely because there is more crossover in responsibility and decision-making, and it's harder to identify a chain of command because they're less useful in an organization that small.
>
> Of course in this case there were four people arrested on the scene. Our position is that there were four people, total, that can be used in the sense that the guideline does when it speaks of an organization.

(Court File No. 176, Sent. Tr., pp. 17-19). The Court denied the objection on the grounds there five

11

participants, including an uncharged driver, as Charlie Wade indicated in his testimony.

Again, Petitioner is faced with the fact counsel did in fact object on the very ground Petitioner now reasserts. Petitioner offers no argument or evidence beyond that offered by counsel in the above-quoted section.[2] The Court thus concludes Petitioner has failed to establish counsel's performance was deficient, and **DENIES** his motion on this ground.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's sentence was not imposed in violation of the Constitution or laws of the United States or is otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will therefore be **DENIED** (Court File Nos. 161, 165).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

---

[2] Petitioner cites a number of cases suggesting, the Court assumes, the government was required to meet a higher evidentiary burden of establishing there were five participants. However, none of the cases cited by Petitioner actually stands for that proposition. *See United States v. Bringer*, 405 F.3d 310 (5th Cir. 2005); *United States v. Santos*, 357 F.3d 136 (1st Cir. 2004); *United States v. Quigley*, 373 F.3d 133 (D.C. Cir. 2004); *United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004). Moreover, the government need only establish the number of participants by a preponderance of the evidence. *See United States v. Lewis*, 68 F.3d 987 (6th Cir. 1995).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**